## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**SAUL EWING LLP**
Elizabeth U. Witmer, Esq. (55808)
Sean T. O'Neill, Esq. (205595)
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087-5569

*Attorneys for Plaintiff Transcontinental Gas Pipe Line Company, LLC*

|  |  |  |
|---|---|---|
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC 2800 POST OAK BOULEVARD HOUSTON, TEXAS 77251-1396, | : : : : : | |
| Plaintiff, | : : | CIVIL ACTION – LAW |
| v. | : : | Docket No. 5:17-CV-00711-EGS |
| PERMANENT EASEMENT FOR 3.51 ACRES, TEMPORARY EASEMENTS FOR 5.90 ACRES AND TEMPORARY ACCESS EASEMENT FOR 0.35 ACRES IN CONESTOGA TOWNSHIP, LANCASTER COUNTY, PENNSYLVANIA, TAX PARCEL NUMBER 1204970900000, 325 CONESTOGA BOULEVARD, LANCASTER, PA 17602 | : : : : : : : : : | |
| JUSTIN L. CAPPIELLO AND SUSAN A. CAPPIELLO 1515 RIDGE ROAD LANCASTER, PA 17603 | : : : : : | |
| AND ALL UNKNOWN OWNERS | : : | |
| Defendants. | : | |

```
TRANSCONTINENTAL GAS PIPE LINE          :
COMPANY, LLC                            :
2800 POST OAK BOULEVARD                 :
HOUSTON, TEXAS  77251-1396,             :
                                        :
                    Plaintiff,          :
         v.                             :          CIVIL ACTION – LAW
                                        :
PERMANENT EASEMENT FOR 0.78             :     Docket No. 5:17-CV-00713-EGS
ACRES AND TEMPORARY EASEMENTS           :
FOR 1.14 ACRES IN CONESTOGA             :
TOWNSHIP, LANCASTER COUNTY,             :
PENNSYLVANIA, TAX PARCEL                :
NUMBER 1201686900000, 85 SPRING         :
RUN ROAD, CONESTOGA, CONESTOGA          :
TOWNSHIP, LANCASTER COUNTY, PA          :
17516                                   :
                                        :
BRET M. LEVY AND LAURA L. LEVY          :
85 SPRING RUN ROAD                      :
CONESTOGA, PA 17516                     :
                                        :
LANCASTER FARMLAND TRUST                :
125 LANCASTER AVENUE                    :
STRASBURG, PA  17579                    :
                                        :
AND ALL UNKNOWN OWNERS,                 :
                                        :
                    Defendants.         :
```

TRANSCONTINENTAL GAS PIPE LINE            :
COMPANY, LLC                              :
2800 POST OAK BOULEVARD                   :
HOUSTON, TEXAS  77251-1396,               :
                                          :
                         Plaintiff,       :
                                          :        CIVIL ACTION – LAW
             v.                           :
                                          :     Docket No. 5:17-CV-00714-EGS
PERMANENT EASEMENT FOR 0.45               :
ACRES AND TEMPORARY EASEMENTS             :
FOR 0.56 ACRES IN CONESTOGA               :
TOWNSHIP, LANCASTER COUNTY,               :
PENNSYLVANIA, TAX PARCEL                  :
NUMBER 1207206900000, 4014 MAIN           :
STREET, CONESTOGA, PA 17516               :
                                          :
JEFFREY A. KANN                           :
4014 MAIN STREEET                         :
CONESTOGA, PA 17516                       :
                                          :
AND                                       :
                                          :
KIMBERLY S. KANN                          :
4235 MAIN STREET                          :
CONESTOGA, PA 17516                       :
                                          :
AND ALL UNKNOWN OWNERS,                   :
                                          :
                         Defendants.      :

TRANSCONTINENTAL GAS PIPE LINE           :
COMPANY, LLC                             :
2800 POST OAK BOULEVARD                  :
HOUSTON, TEXAS  77251-1396,              :
                                         :
                        Plaintiff,       :
                                         :
        v.                               :          CIVIL ACTION – LAW
                                         :
PERMANENT EASEMENTS FOR                  :          Docket No. 5:17-CV-00715-EGS
2.14 ACRES AND TEMPORARY                 :
EASEMENTS FOR 3.59 ACRES IN              :
CONESTOGA TOWNSHIP, LANCASTER            :
COUNTY, PENNSYLVANIA, TAX                :
PARCEL NUMBER 1201606900000,             :
415 HILLTOP DRIVE, CONESTOGA,            :
CONESTOGA TOWNSHIP, LANCASTER            :
COUNTY, PA                               :
                                         :
HILLTOP HOLLOW LIMITED                   :
PARTNERSHIP                              :
203 SIDEHILL TERRACE                     :
WILLOW STREET, PA 17584                  :
                                         :
HILLTOP HOLLOW PARTNERSHIP, LLC          :
GENERAL PARTNER OF HILLTOP               :
HOLLOW LIMITED PARTNERSHIP               :
203 SIDEHILL TERRACE                     :
WILLOW STREET, PA 17584                  :
                                         :
LANCASTER FARMLAND TRUST                 :
125 LANCASTER AVENUE                     :
STRASBURG, PA 17579                      :
                                         :
AND ALL UNKNOWN OWNERS,                  :
                                         :
                        Defendants.      :

TRANSCONTINENTAL GAS PIPE LINE    :
COMPANY, LLC    :
2800 POST OAK BOULEVARD    :
HOUSTON, TEXAS  77251-1396,    :
    :
              Plaintiff,    :
    v.    :      CIVIL ACTION – LAW
    :
PERMANENT EASEMENT FOR 0.77    :    Docket No. 5:17-CV-00716-EGS
ACRES AND TEMPORARY EASEMENTS    :
FOR 1.33 ACRES IN CONESTOGA    :
TOWNSHIP, LANCASTER COUNTY,    :
PENNSYLVANIA, TAX PARCEL    :
NUMBER 1200300500000, 1020 PEQUEA    :
CREEK ROAD, CONESTOGA, PA 17516    :
    :
MICHAEL S. EVERHART AND    :
DEIRDRE E. EVERHART    :
(A/K/A DEIDRE E. EVERHART)    :
1020 PEQUEA WAY CREEK    :
CONESTOGA, PA 17516    :
    :
AND ALL UNKNOWN OWNERS,    :
    :
              Defendants.    :

| | | |
|---|---|---|
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC<br>2800 POST OAK BOULEVARD<br>HOUSTON, TEXAS  77251-1396,<br><br>                    Plaintiff,<br><br>          v.<br><br>PERMANENT EASEMENT FOR 1.55 ACRES AND TEMPORARY EASEMENTS FOR 2.70 ACRES IN CONESTOGA TOWNSHIP, LANCASTER COUNTY, PENNSYLVANIA, TAX PARCEL NUMBER 1202327600000, 409 SICKMAN MILL ROAD, CONESTOGA, PA 17516<br><br>JOHN R. GERDY<br>C/O E. FOLLIN SMITH<br>AS POWER OF ATTORNEY<br>409 SICKMAN MILL ROAD<br>CONESTOGA, PA 17516<br><br>E. FOLLIN SMITH<br>409 SICKMAN MILL ROAD<br>CONESTOGA, PA 17516<br><br>AND ALL UNKNOWN OWNERS<br><br>                    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION – LAW<br><br>Docket No. 5:17-CV-00717-EGS |

TRANSCONTINENTAL GAS PIPE LINE          :
COMPANY, LLC                            :
2800 POST OAK BOULEVARD                 :
HOUSTON, TEXAS  77251-1396,             :
                                        :
                         Plaintiff,     :
                                        :        CIVIL ACTION – LAW
            v.                          :
                                        :     Docket No. 5:17-CV-00718-EGS
PERMANENT EASEMENT FOR 1.99             :
ACRES AND TEMPORARY EASEMENTS           :
FOR 3.48 ACRES IN RAPHO TOWNSHIP,       :
LANCASTER COUNTY,                       :
PENNSYLVANIA, TAX PARCEL                :
NUMBER 5401769000000, 3248 ECHO         :
VALLEY ROAD, RAPHO TOWNSHIP,            :
LANCASTER COUNTY, PA 17545              :
                                        :
STEVEN G. MILLER                        :
3248 ECHO VALLEY ROAD                   :
MANHEIM, PA 17545                       :
                                        :
AND ALL UNKNOWN OWNERS                  :
                                        :
                         Defendants.    :

TRANSCONTINENTAL GAS PIPE LINE :
COMPANY, LLC :
2800 POST OAK BOULEVARD :
HOUSTON, TEXAS  77251-1396, :
 :
     Plaintiff, :   CIVIL ACTION – LAW
  v. :
 :  Docket No. 5:17-CV-00719-EGS
TEMPORARY EASEMENT FOR 0.01 :
ACRES IN WEST HEMPFIELD :
TOWNSHIP, LANCASTER COUNTY, :
PENNSYLVANIA, TAX PARCEL :
NUMBER 3002941200000, :
4402 FAIRVIEW ROAD, COLUMBIA, :
WEST HEMPFIELD TOWNSHIP, :
LANCASTER COUNTY, PA 17512 :
 :
CHRISTINE M. WENGER :
4402 FAIRVIEW ROAD :
COLUMBIA, PA 17512-8817 :
 :
AND ALL UNKNOWN OWNERS :
 :
     Defendants. :

TRANSCONTINENTAL GAS PIPE LINE
COMPANY, LLC
2800 POST OAK BOULEVARD
HOUSTON, TEXAS  77251-1396,

     Plaintiff,

  v.

PERMANENT EASEMENT FOR 1.33
ACRES AND TEMPORARY EASEMENTS
FOR 2.28 ACRES IN CONESTOGA
TOWNSHIP, LANCASTER COUNTY,
PENNSYLVANIA, TAX PARCEL
NUMBER 1202476100000,
4160 MAIN STREET, CONESTOGA, PA
17516

LYNDA LIKE A/K/A LINDA LIKE
4160 MAIN STREET
CONESTOGA, PA 17516

AND ALL UNKNOWN OWNERS,

     Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION – LAW

Docket No. 5:17-CV-00720-EGS

1971779.2 02/20/2017

TRANSCONTINENTAL GAS PIPE LINE       :
COMPANY, LLC                          :
2800 POST OAK BOULEVARD              :
HOUSTON, TEXAS  77251-1396,          :
                                      :
                        Plaintiff,    :
                                      :          CIVIL ACTION – LAW
            v.                        :
                                      :      Docket No. 5:17-CV-00721-EGS
PERMANENT EASEMENT FOR 1.62          :
ACRES AND TEMPORARY EASEMENTS        :
FOR 2.61 ACRES IN RAPHO TOWNSHIP,    :
LANCASTER COUNTY,                     :
PENNSYLVANIA, TAX PARCEL             :
NUMBER 5400795500000, 1766           :
HABECKER ROAD, COLUMBIA, RAPHO       :
TOWNSHIP, LANCASTER COUNTY, PA       :
17512                                 :
                                      :
RUSSELL STEPANCHAK AND,              :
PATRICIA G. STEPANCHAK               :
1766 HABECKER ROAD                    :
COLUMBIA, PA 17512                    :
                                      :
AND ALL UNKNOWN OWNERS,              :
                                      :
                       Defendants.    :

TRANSCONTINENTAL GAS PIPE LINE            :
COMPANY, LLC                              :
2800 POST OAK BOULEVARD                   :
HOUSTON, TEXAS  77251-1396,               :
                                          :
                         Plaintiff,       :
                                          :        CIVIL ACTION – LAW
               v.                         :
                                          :      Docket No. 5:17-CV-00722-EGS
PERMANENT EASEMENT FOR 0.94               :
ACRES AND TEMPORARY EASEMENTS             :
FOR 1.61 ACRES IN CONESTOGA               :
TOWNSHIP, LANCASTER COUNTY,               :
PENNSYLVANIA, TAX PARCEL                  :
NUMBER 1203589400000,                     :
SICKMAN MILL ROAD                         :
                                          :
BLAIR B. MOHN AND MEGAN E. MOHN           :
356 SAND HILL ROAD                        :
CONESTOGA, PA  17516                      :
                                          :
AND ALL UNKNOWN OWNERS                    :
                                          :
                         Defendants.      :

1971779.2 02/20/2017

TRANSCONTINENTAL GAS PIPE LINE   :
COMPANY, LLC   :
2800 POST OAK BOULEVARD   :
HOUSTON, TEXAS 77251-1396,   :
  :
     Plaintiff,   :
  :     CIVIL ACTION – LAW
   v.   :
  :   Docket No. 5:17-CV-00723-EGS
PERMANENT EASEMENT FOR 2.02   :
ACRES AND TEMPORARY EASEMENTS   :
FOR 2.76 ACRES IN MANOR TOWNSHIP,   :
LANCASTER COUNTY,   :
PENNSYLVANIA, TAX PARCEL   :
NUMBER 4100300500000,   :
3049 SAFE HARBOR ROAD,   :
MANOR TOWNSHIP, LANCASTER, PA   :
17551   :
  :
STEPHEN D. HOFFMAN   :
3049 SAFE HARBOR ROAD   :
MILLERSVILLE, PA 17551   :
  :
AND ALL UNKNOWN OWNERS   :
  :
     Defendants.   :

## MEMORANDUM OF LAW IN SUPPORT OF OMNIBUS MOTION FOR PRELIMINARY INJUNCTION FOR POSSESSION OF RIGHTS OF WAY BY MARCH 20, 2017 PURSUANT TO THE NATURAL GAS ACT AND FEDERAL RULES OF CIVIL PROCEDURE 71.1 AND 65

## Table of Contents

I.  PROCEDURE UNDER THE NATURAL GAS ACT AND FEDERAL RULE OF
    CIVIL PROCEDURE 71.1 ..................................................................................1

II. INTRODUCTION AND PROCEDURAL HISTORY.........................................2

III. FACTS RELEVANT TO TRANSCO'S OMNIBUS MOTION FOR
     PRELIMINARY INJUNCTION FOR POSSESSION OF THE RIGHTS OF
     WAY ON EACH PROPERTY..........................................................................9

    A.  TRANSCO'S IMMEDIATE NEED FOR ACCESS TO THE RIGHTS OF
        WAY TO CONDUCT FIELD SURVEYS.............................................9

    B.  CONSTRUCTION OF THE ATLANTIC SUNRISE PROJECT ........12

IV. QUESTION PRESENTED................................................................................13

V.  TRANSCO IS ENTITLED TO A PRELIMINARY INJUNCTION...............14

    A.  LIKELIHOOD OF SUCCESS ON THE MERITS ..............................14

    B.  TRANSCO WILL SUFFER IMMEDIATE AND IRREPARABLE
        HARM.....................................................................................................18

        1.  Transco Will Suffer Irreparable Harm If It Does Not Have Access
            To And Possession Of The Rights Of Way By March 20, 2017 ...............18

        2.  Transco Will Suffer Irreparable Harm If Landowners Or Others
            Interfere With Transco's Possession Of The Rights of Way ....................21

    C.  DEFENDANTS' HARM CAN BE REMEDIED WITH MONEY
        DAMAGES..............................................................................................23

    D.  THE PUBLIC INTEREST IS PROTECTED BY GRANTING TRANSCO
        POSSESSION ..........................................................................................25

V.  CONCLUSION................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

Allegheny Energy, Inc. v. DQE, Inc.,
    171 F.3d 153 (3d Cir. 1999)..................................................................................12

Alliance Pipeline L.P. v. 4.360 Acres of Land,
    746 F.3d 362 (8th Cir. 2014) .........................................................................6, 13

ANR Pipeline Co. v. Acres of Land,
    No. 03 C 50348, 2004 WL 421527 (N.D. Ill. Feb. 24, 2004)................................6, 14

Berne Corp. v. Gov't of the Virgin Islands,
    570 F.3d 130 (3d Cir. 2009)..................................................................................20

Columbia Gas Transmission Corp. v. An Easement,
    No. 05 CV 2895, 2006 WL 401850 (E.D. Pa. Feb. 16, 2006)..................................6, 13, 22, 23

Columbia Gas Transmission LLC v. 0.85 Acres,
    Civ. No. WDQ-14-2288, 2014 WL 4471541 (D. Md. Sept. 8, 2014) ....................6, 13, 17, 22

Columbia Gas Transmission, LLC v. 1.01 Acres,
    768 F.3d 300 (3d Cir. 2014)................................................................. *passim*

Constitution Pipeline Co. v. A Permanent Easement for 0.42 Acres and
    Temporary Easements for 0.46 Acres,
    No. 1:14-CV-2057, 2015 WL 12556145 (N.D.N.Y. Apr. 17, 2015).............................. *passim*

Constitution Pipeline Company, LLC v. A Permanent Easement for 1.92 Acres,
    Civ. A. No. 3:14-2445, 2015 WL 1219524 (M.D. Pa. Mar. 17, 2015)...........................1, 6, 13

E. Tenn. Natural Gas, LLC v. 3.62 Acres,
    No. Civ. A. 1:06CV00028, Civ. A. 1:06-CV-00029, 2006 WL 1453937 (W.D.
    Va. May 18, 2006) .........................................................................13, 17, 22

East Tennessee Natural Gas Co. v. Sage,
    361 F.3d 808 (4th Cir. 2004) ................................................................. *passim*

Kansas Pipeline Co. v. A 200 Foot By 250 Foot Piece of Land,
    210 F. Supp. 2d 1253 (D. Kan. 2002)..................................................................14

Maritimes & Ne. Pipeline, L.L.C. v. 6.85 Acres of Land,
    537 F. Supp. 2d 223 (D. Me. 2008) ....................................................................13

N. Border Pipeline Co. v. 64.111 Acres,
    125 F. Supp. 299 (N.D. Ill. 2000) ......................................................................23

Pa. Pub. Util. Comm'n v. FERC,
    881 F.2d 1123 (D.C. Cir. 1989).....................................................................................15

In re Permian Basin Area Rate Cases,
    390 U.S. 747 (1968)......................................................................................................15

Perryville Gas Storage LLC v. 40 Acres of Land,
    Civ. A. No. 3:11-cv-1635, 2011 WL 4943318 (W.D. La. Oct. 17, 2011)...............6, 13, 16, 18

Portland Natural Gas Transmission System v. 4.83 Acres of Land,
    26 F. Supp. 2d 332 (D.N.H. 1998).................................................................................14

Rockies Express Pipeline LLC v. Approximately 16 Acres,
    No. 1:08-CV-0344-RLY-WTL, 2008 WL 1325266 (S.D. Ind. Apr. 10, 2008) .....................18

Roe v. Operation Rescue,
    54 F.3d 133 (3d Cir. 1995)......................................................................................20, 21

Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement
    Beneath 11.078 Acres,
    Civ. A. Nos. 08-168, et al., 2008 WL 4346405 (W.D. Pa. Sept. 19, 2008)..................... *passim*

Tacoma v. Taxpayers,
    357 U.S. 320 (1958)......................................................................................................14

Tenn. Gas Pipeline Co. v. 104 Acres of Land,
    749 F. Supp. 427 (D.R.I. 1990).....................................................................................15

Tenn. Gas Pipeline Co. v. Mass. Bay Transp. Auth.,
    2 F. Supp. 2d 106 (D. Mass. 1998) ...............................................................................14

Transcontinental Gas Pipe Line Co., LLC v. Permanent Easement Totaling 2.322
    Acres,
    Civ. A. No. 3:14-cv-00400-HEH, 2014 WL 4365476 (E.D. Va. Sept. 2, 2014)...........6, 13, 17

USG Pipeline Co. v. 1.74 Acres,
    1 F. Supp. 2d 816 (E.D. Tenn. 1998).............................................................................22

Williams Natural Gas Co. v. City of Oklahoma City,
    890 F.2d 255 (10th Cir. 1989), cert. denied, 497 U.S. 1003 (1990).......................................14

**Statutes**

15 U.S.C. § 717f(h).................................................................................................................1

15 U.S.C. § 717r(c)...............................................................................................................15

Fed. R. Civ. P. 71.1...............................................................................................................1

In this Omnibus Motion, Transco seeks immediate possession of the Rights of Way at issue in the above-captioned condemnation cases.

## I.     PROCEDURE UNDER THE NATURAL GAS ACT AND FEDERAL RULE OF CIVIL PROCEDURE 71.1.

Transco's[1] authority for exercising the right of eminent domain in each of the above-captioned condemnation actions comes from the Natural Gas Act.  See 15 U.S.C. § 717f(h). Federal Rule of Civil Procedure 71.1 governs the procedure for federal condemnation actions. Fed. R. Civ. P. 71.1(a).  It provides for the initiation of the condemnation action by filing a complaint and serving a notice of the condemnation.  Fed. R. Civ. P. 71.1(c), (d).  A defendant is not required to answer the complaint, and may instead enter a notice of appearance if the defendant has no objection or defense to the taking.  However, any defendant may present evidence at the trial on compensation, regardless of whether it has previously appeared or answered.  Fed. R. Civ. P. 71.1(e).  After a trial on compensation, the judgment amount is paid to the defendants or deposited with the court and title is granted to the condemnor.  See Fed. R. Civ. P. 71.1(h), (j).

Neither the Natural Gas Act nor Rule 71.1 provide a specific procedure for obtaining possession of the property being condemned prior to the payment of compensation.  However, as illustrated by the decisions in Columbia Gas Transmission, LLC v. 1.01 Acres, 768 F.3d 300, 316 (3d Cir. 2014), Constitution Pipeline Company, LLC v. A Permanent Easement for 1.92 Acres, Civ. A. No. 3:14-2445, 2015 WL 1219524 (M.D. Pa. Mar. 17, 2015), and East Tennessee Natural Gas Co. v. Sage, 361 F.3d 808 (4th Cir. 2004), a court may use its equitable power to grant a preliminary injunction awarding immediate possession to a pipeline company as long as

---

[1]     The same definitions used in the Verified Complaints are used in this Motion.

the court first determines that the company has the substantive right to condemn the interests being taken.

Because of the unique procedures associated with federal condemnation actions under the Natural Gas Act, Transco must first establish its substantive right to condemn the Rights of Way in each condemnation action before asking the Court to grant a preliminary injunction for possession of the Rights of Way. Accordingly, Transco respectfully requests that the Court make a determination on the Motions for Partial Summary Judgment in each condemnation action prior to, or simultaneously with, this Omnibus Motion.

## II.   INTRODUCTION AND PROCEDURAL HISTORY.

FERC found in the FERC Order issued on February 3, 2017 that "the public convenience and necessity requires approval" of the Project, which is designed to meet the growing demand for natural gas in the Mid-Atlantic and Southeastern markets. FERC Order, ¶¶ 29, 33. The Project is 100 percent subscribed by shippers, who have executed precedent agreements for the Project capacity. Id. The shippers include Southern Company Services, which owns electric generation facilities in Alabama, Florida, Georgia and Mississippi; Seneca Resources Corporation, which has entered into long-term gas sales contracts with natural gas and electric end users for all of its capacity on the Project; and Washington Gas Light Company, an existing end-use customer on Transco's southeastern system, as well as others. FERC Order, ¶ 30.

The Project involves the construction of pipeline and other facilities in Pennsylvania, Virginia, Maryland, North Carolina and South Carolina, including nearly 200 miles of pipeline in Pennsylvania, two new compressor stations in Pennsylvania, two new meter stations and three new regulator stations; and in multiple states modifications at ten existing compressor stations,

forty-two existing metering and regulating stations and fourteen existing mainline valve locations, together with ancillary facilities, as discussed in the FERC Order, ¶¶ 6-8.[2]

Transco filed Verified Complaints and Motions for Partial Summary Judgment in each of the above-captioned condemnation actions and now files this Omnibus Motion seeking possession of the Rights of Way sought in each condemnation action by March 20, 2017 in order to conduct Field Surveys (as that term is defined in the Sztroin Injunction Declaration) and then construct the Project as required by the FERC Order.[3]

The Environmental Conditions, Appendix C to the FERC Order, contain 43 conditions that Transco must satisfy prior to construction. Many of those conditions, as described below, require that Transco first has possession of the Rights of Way being condemned so that it can conduct Field Surveys. Without the Field Surveys, the conditions cannot be met and the Project will be delayed, and therefore the public necessity and convenience for which the Project is required will not be met. Sztroin Injunction Declaration, ¶ 3.

FERC contemplated in the Final Environmental Impact Statement ("FEIS") that Transco would have to use condemnation to obtain possession for Field Surveys:

> . . . Transco had field surveyed over 95 percent of the proposed pipeline route. Completion of field surveys is primarily dependent upon acquisition of survey permission from landowners. If the necessary access cannot be obtained through coordination with landowners and the Project is approved by FERC, Transco may use the right of eminent domain granted to it under section 7(h) of the NGA to obtain a right-of-way. Therefore, it is likely that access to complete these outstanding surveys (and associated

---

[2]    The pipeline is illustrated in Exhibit B to the Declaration of David Sztroin in support of this Omnibus Motion ("Sztroin Injunction Declaration"), which shows the pipeline route and the locations of the properties which are the subject of this Omnibus Motion.

[3]    A true and correct copy of the relevant excerpts of the FERC Order is attached as Exhibit A to the Sztroin Injunction Declaration.

agency permitting) would have to be done after issuance of a Certificate.

FEIS, Section 1.2; see also FEIS, Volume III, CO31-9 and PM2-102.[4]

Since Transco cannot even begin construction until the Field Surveys are complete, and since some the surveys themselves may only be done during very limited windows of time, or take months to analyze, Transco has determined that it must have possession of the Rights of Way where survey access is needed as soon as possible, but in any case by March 20, 2017. Sztroin Injunction Declaration, ¶ 6.

Once the Field Surveys are complete, Transco will work on satisfying all 43 pre-construction conditions in the FERC Order so that construction may commence across the Project. Most of those conditions, as described below, relate to the almost 200 miles of pipeline to be built in Pennsylvania. In the meantime, Transco is working on any other aspect of the Project that it can, so that the Project can be completed on time to serve the needs of shippers and before the February 2020 deadline set by the FERC Order. On February 17, 2017, for example, Transco sought a Notice to Proceed from FERC to begin modifications required at one of the compressor stations, Compressor Station 185 in Prince William County, Virginia, because it has all of the necessary federal authorizations for that work. Just that very small segment of the Project, which is only one of the ten existing compressor stations to be modified, is scheduled to take five months. Sztroin Injunction Declaration, ¶¶ 7-9.[5]

---

[4]    The FEIS was issued by the FERC on December 30, 2016 and is a matter of public record subject to judicial notice under Fed. R. Evid. 201, available at https://www.ferc.gov/industries/gas/enviro/eis/2016/12-30-16-FEIS.asp. A true and correct copy of the relevant excerpts of the FEIS is attached as Exhibit E to the Sztroin Injunction Declaration.

[5]    A true and correct copy of Transco's February 17, 2017 Request for Notice to Proceed is attached as Exhibit C to the Sztroin Injunction Declaration.

Transco's contracts with its shippers require that the Project be completed and in service for the 2017-2018 winter heating season, or as soon as commercially practicable thereafter. The delays in the projected initial date of issuance of the Final Environmental Impact Statement delayed the issuance of the FERC Order to February 2017, and the Project cannot be constructed and in service by the winter of 2017, but Transco has identified July 2018 as the earliest commercially practicable date it could complete the Project. The shippers now have an immediate and existing need for the additional natural gas supply and will begin utilizing that supply as soon as the Project is placed in service.[6] Sztroin Injunction Declaration, ¶¶ 10, 11.

In order to complete the Project as soon as commercially practicable, survey access is required by March 20, 2017 in order to ensure that Transco can complete Field Surveys, provide the information required by the FERC Order and permitting agencies, complete construction of the Project and place it in-service. Sztroin Injunction Declaration, ¶ 12.

This Project is further complicated because certain Landowners and other individuals have expressed their intention to interfere with Transco's authorized activities – and in at least one instance have already assembled within the Rights of Way for the purpose of preventing survey and constructing of the Project. Having demonstrated its substantive right to condemn the Rights of Way in the Motions for Partial Summary Judgment, Transco respectfully requests that the Court exercise its equitable powers to grant Transco access to and possession of the

---

[6]     For example, as stated by Seneca Resources Corporation in a letter in the FERC record dated February 8, 2016, Seneca has entered into long term natural gas sales contracts for all of its capacity and both "natural and electric consumers are reliant on these natural gas sales transactions." FERC Docket No. CP15-138-000, February 8, 2016 Letter by Seneca Resources Corporation. Similarly, the Southern Company is relying on access to the natural gas supply it has contracted in the Project for future reliable service of demand during winter heating seasons. FERC Docket No. CP15-138-000, February 1, 2016 Letter by the Southern Company. True and correct copies of both letters are included in Exhibit D to the Sztroin Injunction Declaration.

Rights of Way prior to the payment of compensation, and to authorize the U.S. Marshal Service to enforce each Order granting Transco access and possession.

Courts have repeatedly granted injunctive relief prior to the payment of just compensation – in the form of possession of the easements being condemned – to pipeline companies holding valid certificates of public convenience and necessity. E.g., Columbia Gas Transmission, LLC v. 1.01 Acres, 768 F.3d at 316; Constitution Pipeline Company, LLC v. A Permanent Easement for 1.92 Acres, 2015 WL 1219524, at *4; Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres, Civ. A. Nos. 08-168, et. al, 2008 WL 4346405, at *18 (W.D. Pa. Sept. 19, 2008); Sage, 361 F.3d at 830; Alliance Pipeline L.P. v. 4.360 Acres of Land, 746 F.3d 362, 368-69 (8th Cir. 2014); Constitution Pipeline Co. v. A Permanent Easement for 0.42 Acres and Temporary Easements for 0.46 Acres, No. 1:14-CV-2057 (NAM/RFT), 2015 WL 12556145, at *5 (N.D.N.Y. Apr. 17, 2015); Columbia Gas Transmission LLC v. 0.85 Acres, Civ. No. WDQ-14-2288, 2014 WL 4471541, at *7 (D. Md. Sept. 8, 2014); Transcontinental Gas Pipe Line Co., LLC v. Permanent Easement Totaling 2.322 Acres, Civ. A. No. 3:14-cv-00400-HEH, 2014 WL 4365476, at *6 (E.D. Va. Sept. 2, 2014); Columbia Gas Transmission Corp. v. An Easement, No. 05 CV 2895, 2006 WL 401850, at *3 (E.D. Pa. Feb. 16, 2006); Perryville Gas Storage LLC v. 40 Acres of Land, Civ. A. No. 3:11-cv-1635, 2011 WL 4943318, at *4 (W.D. La. Oct. 17, 2011).

Pipeline companies should not be required to wait until compensation is paid to access a property if the amount of just compensation is secured prior to access. ANR Pipeline Co. v. Acres of Land, No. 03 C 50348, 2004 WL 421527, at *1 (N.D. Ill. Feb. 24, 2004) ("There is no requirement that the compensation be paid before possession is taken only that a reasonable and adequate provision for obtaining compensation after the taking exists."). Here, Transco proposes

to post bonds in the amounts set forth in Exhibit F to the Sztroin Injunction Declaration as security for the payment of just compensation in each of the condemnation actions, or such other amounts as determined by the Court.  The proposed bond amounts are three times the Appraised Value of the Rights of Way, or $10,000, whichever is larger.

Accordingly, Transco seeks entry of the proposed Orders attached hereto as Exhibit A granting it possession of the Rights of Way on each Property by March 20, 2017 upon the posting of the bonds.

## III.  FACTS RELEVANT TO TRANSCO'S OMNIBUS MOTION FOR PRELIMINARY INJUNCTION FOR POSSESSION OF THE RIGHTS OF WAY ON EACH PROPERTY.

The relevant facts are set forth in the Sztroin Injunction Declaration and the Declaration of Aaron Blair ("Blair Injunction Declaration"), which are incorporated by reference, along with the Sztroin Declaration and Blair Declaration previously filed in support of the Motions for Partial Summary Judgment in each action.  Nonetheless, a brief summary follows.

### A.  TRANSCO'S IMMEDIATE NEED FOR ACCESS TO THE RIGHTS OF WAY TO CONDUCT FIELD SURVEYS

The FERC Order includes 43 Environmental Conditions which must be satisfied prior to the start of construction, many of which require access to the Rights of Way to complete Field Surveys.  For example, Environmental Condition 6 requires Transco to file an Implementation Plan for review and approval by the Director of the Office of Energy Projects ("OEP") at FERC before construction begins.  FERC Oder, Appendix C, ¶ 6.  In turn, because there are 12 Environmental Conditions that require Transco to file certain documents and information with its Implementation Plan, each of those conditions must likewise be met before construction begins. See FERC Order, ¶¶ 21-23, 29, 30, 34, 35, 38, 41, 42, 44, 50.  Although Transco has filed its Implementation Plan, it was not able to include detailed schedules for areas that have not yet

been surveyed because of lack of access to the Rights of Way and will have to file supplements to the Implementation Plan as it completes the remaining Field Surveys.  Sztroin Injunction Declaration, ¶ 17(c).

At least 12 of the 43 Environmental Conditions which must be met prior to construction either require access to the Rights of Way to conduct Field Surveys or require Transco to submit documentation to FERC that may need to be supplemented or modified based on the results of completed Field Surveys.  Sztroin Injunction Declaration, ¶ 16 (identifying Environmental Conditions 3-6, 10, 22, 24, 25, 31, 32, 37 and 47).  The Sztroin Injunction Declaration further details the need for survey access to satisfy nine of those Environmental Conditions and the potential impacts on Transco's construction schedule.  See Sztroin Injunction Declaration, ¶ 17 (discussing Environmental Conditions 4-6, 10, 22, 24, 25, 32 and 47).

The Field Surveys are only the start of the process required to satisfy some of the pre-construction conditions.  For example, it has taken an average of two to three months for Transco's engineering teams to evaluate any new survey data, prepare permit drawings and reconcile any alignments sheets.  Sztroin Injunction Declaration, ¶ 17(a).  Accordingly, once Transco obtains survey access to the Rights of Way it could take an additional two to three months for Transco to prepare the revised alignment sheets required by Environmental Condition 4 prior to the start of construction.  Further, if an unexpected condition is discovered in Field Surveys that would require a realignment or relocation of facilities, Transco would then need to prepare revised alignment sheets as required by Environmental Condition 5.  Given the time it may take for Transco to prepare any revised alignments sheets required by Environmental Conditions 4 and 5, Transco needs access to the Rights of Way as soon as possible, but no later than March 20, 2017, if it is to be able to start construction in the summer of 2017 so that it can

complete construction as soon as commercially practicable.  See Sztroin Injunction Declaration, ¶ 17(a), (b).

Further, if Transco does not have access to the Rights of Way to conduct Field Surveys by March 20, 2017, it could potentially delay the start of construction by a full year because there are limited windows of time during which some threatened and endangered species surveys, such as bog turtle surveys can be conducted.  Transco still needs to complete bog turtle surveys in Lancaster and Lebanon Counties, where 16 of the condemned properties are located, and if habitat is identified, Phase 2 bog turtle surveys are only permitted between April 15 and June 15.  See Sztroin Injunction Declaration, ¶ 17(b).  Further, if Field Surveys discover unexpected conditions that would require a realignment or relocation of facilities, Transco would then need to survey those areas prior to the start of construction and analyze that survey data to prepare revised permit drawings and alignment sheets as required by Environmental Condition 5. Transco needs access to the Rights of Way now, but no later than March 20, 2017, to ensure that there is time to complete any Phase 2 bog turtles surveys this year, otherwise Transco may not be able to complete its permit drawings and satisfy all of the 43 Environmental Conditions required prior to construction until after June 2018, thereby delaying construction and the Project in-service date, by more than a year.  See Sztroin Injunction Declaration, ¶ 17(b).

Finally, Transco must receive all applicable authorizations required under federal law from the permitting agencies prior to the start of construction.  Transco must have complete survey data – which requires access to the Rights of Way to conduct Field Surveys – in order to complete its permit applications.  If Transco is to commence construction late this summer so that it can place the Project in service as soon as commercially practicable, it must have access to the Rights of Way for Field Surveys no later than March 20, 2017 to allow time to analyze the

new survey data and prepare permit drawings required to complete its permit applications prior to the start of construction.  See Sztroin Injunction Declaration, ¶ 17(d).

Given the time it will take for Transco to complete the Field Surveys, analyze the data to prepare permit drawings and revised alignment sheets, the limited window to complete bog turtle surveys, and the potential need to survey new areas based on the results of the Field Surveys, Transco must have access to and possession of the Rights of Way by March 20, 2017 to ensure that it can complete its permit applications and receive the required approvals to start construction in the summer of 2017 and place the Project in service as soon as commercially practicable.

### B.   CONSTRUCTION OF THE ATLANTIC SUNRISE PROJECT.

As set forth above, Transco cannot start construction until it receives all required authorizations from permitting agencies (Environmental Condition 10), and cannot complete its permit applications until it receives access to the Rights of Way to complete Field Surveys. Once Field Surveys are completed, additional time is needed to analyze and implement the new survey data.  Accordingly, any delay in completing Field Surveys likewise delays the start of construction.

Once Transco completes the Field Surveys and then satisfies the 43 Environmental Conditions required prior to the start of construction, Transco will then have to contend with further restrictions during construction as set forth in the Sztroin Injunction Declaration. Construction of the Project is subject to significant restrictions intended to protect the environment and minimize the impact of construction on the environment.  These restrictions are time sensitive and interdependent.  Sztroin Injunction Declaration, ¶ 19.

As set forth above, the Project involves the construction of nearly 200 miles of pipeline, two new compressor stations, two new meter stations, three new regulator stations, modifications

of ten existing compressor stations, forty-two existing metering and regulating stations and fourteen existing mainline valve locations, together with other facilities.  Transco must design and then maintain a detailed construction schedule that coordinates work across the construction spreads and multiple locations that complies with any applicable restrictions, in order to place the Project in service as soon as commercially practicable.  Sztroin Injunction Declaration, ¶ 20.

As with the Field Surveys, there are limited windows of time during which Transco can complete certain construction activities.  For example, the work window for wild trout streams in Pennsylvania closes in October 2017.  In order to place the Project in service as soon as commercially practicable, Transco must install in-stream supports in certain wild trout streams to facilitate the installation of equipment bridges across these streams prior to October 1, 2017.  Otherwise, construction schedule durations would be impacted by mainline spread move arounds" and the anticipated in-service date would be delayed.  See Sztroin Injunction Declaration, ¶¶ 22-24.

Here, Transco's shippers have an immediate need for the natural gas capacity to which each of them subscribed.  In order to place the Project in service as soon as commercially practicable to meet the needs of the shippers, Transco must have survey access as soon as possible, but no later than March 20, 2017, to ensure that Transco can commence construction in the summer of 2017 to maintain its construction schedule.  See Sztroin Injunction Declaration, ¶¶ 11, 12, 17, 18, 31, 36.

## IV.    QUESTION PRESENTED

Is Transco entitled to a preliminary injunction allowing it access to and possession of the Rights of Way on each Property by March 20, 2017 to conduct Field Surveys and construct a federally approved pipeline project?

Suggested Answer:  Yes.

## V.    TRANSCO IS ENTITLED TO A PRELIMINARY INJUNCTION

Transco is entitled to a preliminary injunction granting it possession of the Rights of Way because it meets the standards for a preliminary injunction under Fed. R. Civ. P. 65.

In the Third Circuit, courts consider four factors in determining whether a party is entitled to a preliminary injunction:

    (i)    whether the moving party has shown a reasonable probability of success on the merits;

    (ii)    whether the moving party will be irreparably harmed by denial of injunctive relief;

    (iii)    whether granting injunctive relief will result in even greater harm to the nonmoving party; and

    (iv)    whether granting injunctive relief will be in the public interest.

Columbia Gas Transmission, LLC v. 1.01 Acres, 768 F.3d at 315 (quoting Am. Express Travel Related Servs. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012)).   Courts should balance these factors to determine if a preliminary injunction is appropriate.  Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999).  However, the weighing of the other factors is not paramount when the probability of success is a certainty.  See Columbia Gas Transmission, LLC v. 1.01 Acres, 768 F.3d at 315.

Transco satisfies the preliminary injunction test.

## A.      LIKELIHOOD OF SUCCESS ON THE MERITS.

Transco is likely to succeed on the merits because it has the substantive right to condemn

the Rights of Way under the Natural Gas Act, as established in the Partial Summary Judgment

Motions.  Indeed, the United States Court of Appeals for the Third Circuit has examined §

717f(h) of the Natural Gas Act and held that "a certificate of public convenience and necessity

gives its holder the ability to obtain automatically the necessary right of way through eminent

domain, with the only open issue being the compensation the landowner defendant will receive

in return for the easement." Id. at 304.  In that case, the plaintiff pipeline company filed a

motion for partial summary judgment on its right to condemn certain easements and sought a

preliminary injunction for immediate possession.  Id. at 303.  Upon determining that the pipeline

company had the right to acquire the easements by eminent domain, the Third Circuit granted a

preliminary injunction for immediate possession and noted that there is no merits issue to

determine after the right to condemn is established and the only issue is the amount of

compensation.  Id. at 315.  As the Third Circuit explained:

> This is not a "normal" preliminary injunction, where the merits will await another
> day.  In those situations, the probability of success is not a certainty such that
> weighing the other factors is paramount.  Here, there is no remaining merits issue;
> we have ruled that Columbia has the right to the easements by eminent domain.
> The only issue is the amount of just compensation – which will definitely be
> determined on remand, but the result of which can have no affect [sic] on
> Columbia's rights to the easements.

Id.

Federal courts around the country, and all three Pennsylvania district courts within the

Third Circuit, have uniformly granted injunctive relief to pipeline companies holding valid

FERC certificate orders that had established the substantive right to condemn, subject only to the future determination and payment of just compensation.[7]

Further, Defendants cannot use the condemnation process as a means to collaterally attack the FERC Order. After FERC has issued a certificate order approving an interstate pipeline project, landowners are permitted only to challenge the scope of the federally approved pipeline project and the amount of compensation to be paid for condemnation, and the Court may not entertain a collateral attack on the FERC order, whether based on, for example, an alleged lack of notice, absence of due process in the FERC proceedings or failure by the condemnor to comply with the conditions of the FERC certificate order. See Steckman Ridge, 2008 WL 4346405, at *3; Constitution Pipeline Co. v. A Permanent Easement for 0.42 Acres, 2015 WL 12556145, at *2-*3; Kansas Pipeline Co. v. A 200 Foot By 250 Foot Piece of Land, 210 F. Supp. 2d 1253, 1256 (D. Kan. 2002); Tenn. Gas Pipeline Co. v. Mass. Bay Transp. Auth., 2 F. Supp. 2d 106, 110 (D. Mass. 1998); Portland Natural Gas Transmission System v. 4.83 Acres of Land, 26 F. Supp. 2d 332, 334 (D.N.H. 1998); Williams Natural Gas Co. v. City of Oklahoma City, 890 F.2d 255, 264-66 (10th Cir. 1989), cert. denied, 497 U.S. 1003 (1990); see also Tacoma v. Taxpayers, 357 U.S. 320, 335-41 (1958) (failure of an aggrieved party to raise an issue within the scope of FERC jurisdiction on rehearing with the FERC or on direct appeal to the appropriate

---

[7]     Third Circuit and Pennsylvania district courts: Id. at 316; Constitution Pipeline Company, LLC v. A Permanent Easement for 1.92 Acres, 2015 WL 1219524 at*4; Steckman Ridge, 2008 WL 4346405, at *18; Columbia Gas Transmission Corp. v. An Easement, 2006 WL 401850, at *3. Other federal courts: Sage, 361 F.3d at 830; Alliance Pipeline, 746 F.3d at 368-69; Constitution Pipeline Co. v. A Permanent Easement for 0.42 Acres, 2015 WL 12556145, at *5; Columbia Gas Transmission LLC v. 0.85 Acres, 2014 WL 4471541, at *7; Transcontinental Gas Pipe Line, 2014 WL 4365476, at *6; Perryville Gas Storage, 2011 WL 4943318, at *4; Maritimes & Ne. Pipeline, L.L.C. v. 6.85 Acres of Land, 537 F. Supp. 2d 223, 226-27 (D. Me. 2008); E. Tenn. Natural Gas, LLC v. 3.62 Acres, No. Civ. A. 1:06CV00028, Civ. A. 1:06-CV-00029, 2006 WL 1453937, at *14-*15 (W.D. Va. May 18, 2006)[7]; ANR Pipeline Co. v. Acres of Land, 2004 WL 421527, at *1.

circuit court of appeal is an insurmountable bar to raising it in a subsequent state judicial proceeding).

Section 717r of the Natural Gas Act, 15 U.S.C. § 717r, provides the exclusive procedure for challenging a FERC order, which is with the Circuit Court.  Here, a group of interested parties have filed a Request for Rehearing with the FERC[8], but absent a stay by the FERC, a Request for Rehearing is irrelevant to these proceedings and does not affect Transco's substantive right to condemn or need for immediate possession.  Under the Natural Gas Act, filing an application for rehearing with FERC does not, "unless specifically ordered by the Commission, operate as a stay of the Commission's order."  15 U.S.C. § 717r(c); see Tenn. Gas Pipeline Co. v. 104 Acres of Land, 749 F. Supp. 427, 429, 431 (D.R.I. 1990) (recognizing pipeline company's right to condemn despite pending requests for rehearing); Steckman Ridge, 2008 WL 4346405, at *3 (same and granting immediate possession to pipeline company while requests for rehearing were pending).  Even the grant of a rehearing does not stay the original FERC Certificate absent FERC's grant of a stay.  Pa. Pub. Util. Comm'n v. FERC, 881 F.2d 1123, 1125-26 (D.C. Cir. 1989); In re Permian Basin Area Rate Cases, 390 U.S. 747, 773 (1968) ("[t]he issuance of a stay of an administrative order pending disposition by the Commission of a motion to 'modify or set aside, in whole or in part' the order is a matter committed by the Natural Gas Act to the Commission's discretion.").

Transco is the holder of a FERC certificate of public convenience and necessity and has been unable to reach an agreement with the Landowners as to compensation for the Rights of Way.  Accordingly, Transco has the right to condemn and is likely to succeed on the merits of

---

[8]     FERC Docket No. CP15-138-000, February 10, 2017 Request for Rehearing and Motion for Stay of Allegheny Defense Project, Clean Air Council, Concerned Citizens of

each condemnation action.   Given the irreparable harm that Transco would suffer absent injunctive relief and its likelihood of success on the merits, the Court may grant Transco access to and possession of the Rights of Way for Field Surveys and construction, subject only to the posting of an appropriate bond.

### B.     TRANSCO WILL SUFFER IMMEDIATE AND IRREPARABLE HARM.

Transco cannot risk any delay to the Project because the Landowners will not grant the Rights of Way necessary for survey and construction of the Project.  If Transco does not have possession of the Rights of Way by March 20, 2017 for surveys and construction, then the entire Project schedule will be affected and Transco will not be able to begin construction in time in Pennsylvania to allow the Project to be completed as soon as commercially practicable, as required by the precedent agreements on which the FERC relied in approving the Project, or by the in service date in the FERC Order, which will cause Transco to suffer substantial damages. Sztroin Injunction Declaration, ¶¶ 11, 12, 17, 18, 31-36.

### 1.     Transco Will Suffer Irreparable Harm If It Does Not Have Access To And Possession Of The Rights Of Way By March 20, 2017

Courts around the country have agreed that construction delays in building interstate pipelines constitute immediate and irreparable harm.  Here, Transco cannot even begin construction in Pennsylvania until it has survey access and has satisfied the relevant pre-construction conditions.  E.g., Constitution Pipeline Co. v. A Permanent Easement for 0.42 Acres, 2015 WL 12556145, at *5 (holding that pipeline company would be irreparably harmed without immediate possession because it would be unable to begin construction in time to allow

---

Lebanon County, Heartwood, Lancaster Against Pipelines, Lebanon Pipeline Awareness, and Sierra Club.

the project to be completed by the in service date); Steckman Ridge, 2008 WL 4346405, at *16 (holding that pipeline company would be irreparably harmed without immediate possession because it would suffer undue delay and be in non-compliance with the in service date required by the FERC certificate); Perryville Gas Storage, 2011 WL 4943318, at *3 (holding that pipeline company would be irreparably harmed because environmental restrictions on construction schedule would make it impossible to meet FERC-required in service date absent injunctive relief); E. Tenn. Natural Gas, LLC v. 3.62 Acres, 2006 WL 1453937, at *14 (same); Sage, 361 F.3d at 828-30 (holding that irreparable harm would result if injunctive relief were not granted because the project would suffer undue delay that would cause significant financial harm to the pipeline company and its customers); Transcontinental Gas Pipe Line, 2014 WL 4365476, at *6 (holding that pipeline company established irreparable harm absent injunctive relief because it could not guarantee that it would meet the deadline required by the FERC certificate unless it was granted immediate possession); Columbia Gas Transmission LLC v. 0.85 Acres, 2014 WL 4471541, at *6 (holding that inability to meet in service deadline constituted irreparable harm).

        As in the above cases, Transco cannot wait until after compensation is determined and title granted to take possession of the Rights of Way for surveys and construction.  Given that the normal trial schedule for this Court is at least a year, such a delay is one that Transco and the public cannot afford.  Given that the Field Surveys are required before Transco can work on satisfying the relevant pre-construction conditions, and that construction itself is in many places constrained by environmental conditions, as detailed in the Sztroin Injunction Declaration, Transco must have possession of the Rights of Way by March 20, 2017 in order to be able to complete construction and ensure compliance with shipper contracts and the FERC Order in-service requirement.

If the Project is delayed because Transco does not have access to and possession of the Rights of Way by March 20, 2017 to conduct Field Surveys, Transco will incur approximately $500,000 in additional costs for each month that completion of the Project is delayed. Additionally, for a project of this size, Transco must use multiple construction contractors. Transco's contracts with its contractors anticipate the completion of work on specific segments of the Project by dates certain. If those dates are not met, those contracts are subject to renegotiation and Transco could incur significant additional costs. Sztroin Injunction Declaration, ¶¶ 32, 33.

Other courts have granted injunctive relief to pipeline companies seeking survey access in order to maintain a construction schedule. Perryville Gas Storage, 2011 WL 4943318, at *3 (granting possession for survey and construction and finding irreparable harm where the pipeline company needed access to the properties to conduct surveys and preparatory activities in order to meet the in-service date due to construction constraints resulting from black bear denning season); Constitution Pipeline Co. v. A Permanent Easement for 0.42 Acres, 2015 WL 12556145, at *4, *5 (granting possession for survey and construction and finding irreparable harm where pipeline company offered evidence that it needed immediate access for surveys in order to be able to begin construction in time to meet the in-service date); see also Rockies Express Pipeline LLC v. Approximately 16 Acres, No. 1:08-CV-0344-RLY-WTL, 2008 WL 1325266, at *1, *3 (S.D. Ind. Apr. 10, 2008) (finding that pipeline company would be irreparably harmed if it was not granted injunctive relief to conduct surveys where delays in surveying would result in a "domino effect" that would ultimately delay the start of construction and the in-service date, where the pipeline company needed to complete surveys required by FERC and was potentially subject to contractual liabilities for delay of the in-service date).

Further, if Transco's shippers believes that Transco is not making a reasonable effort to provide service by the promised date, Transco may suffer a loss of customer confidence that may have a detrimental impact on the relationship of Transco with these particular customers and make it more difficult to contract with these shippers in the future. It may also have an adverse effect on the reputation of Transco in the industry and could cause serious harm. Sztroin Injunction Declaration, ¶ 34.

Finally, revenues to Transco from the Project are estimated to be in excess of $1.1 million per day (which would be approximately $33 million per month once service commences). Transco would therefore suffer a substantial loss in revenue if the Project is not placed in service as soon as commercially practicable or by the in-service date required by the FERC Order. Sztroin Injunction Declaration, ¶ 35.

**2.      Transco Will Suffer Irreparable Harm If Landowners Or Others Interfere With Transco's Possession Of The Rights Of Way**

Each of the foregoing harms would also result if Transco is unable to complete the Project because of interference with Transco's possession of the Rights of Way by Landowners or by third parties who are present on the Property at the invitation of Landowners. Numerous Landowners and third parties have signed petitions or otherwise expressed their intention to engage in civil disobedience to prevent construction of the Project, as set forth in the Blair Injunction Declaration. Indeed, there are already individuals assembling in the Rights of Way on certain properties in the construction corridor and there have been individuals assembling in areas where Transco's personnel were conducting surveys. Blair Injunction Declaration, ¶¶ 3-8.

Further, Transco cannot safely conduct some survey activities, such as borings for soil and rock samples, or construct the Project if there are unauthorized and untrained individuals in

the vicinity of the work corridor.  In order to be on or near a construction zone, one must have received the required safety training and by wearing the required safety vest and helmet.  The mere presence of an unauthorized individual near a construction area will halt construction activities, as Transco's personnel are trained and instructed to cease all activities if a person without the required vest and helmet is observed in the area.  Sztroin Injunction Declaration, ¶ 38.

While Transco, working with a Landowner, can use local law enforcement to remove trespassers, Judge Mannion noted in his February 22, 2016 Order in Case No. 3:14-2458 (Dkt. No. 67), that there is no specific enforcement provision in the Natural Gas Act when a Landowner or a Landowner's invitee violates an Order granting possession for surveys and other activities approved by FERC.  See Constitution Pipeline Company, LLC v. A Permanent Easement for 1.84 Acres and Temporary Easements for 3.3 Acres, Civ. A. No. 3:14-2458, February 22, 2016 Order, Dkt. No. 67 (M.D. Pa. Feb. 22, 2016).[9]  Accordingly, Transco respectfully requests that this Court include an enforcement mechanism to ensure compliance with any Order granting Transco access to and possession of the Rights of Way.  In the case before Judge Mannion, landowners were interfering with tree felling activities authorized by the FERC, and this Court authorized the U. S. Marshal Service, or a law enforcement agency it designates, to investigate and to arrest, confine in prison and/or bring before the Court any persons found to be in violation of the Order and in contempt of the Order, pending his/her compliance with the Court's Order.  Id.  Because certain Landowners and third parties have expressed their intentions to similarly interfere with construction activities authorized by the FERC, Transco respectfully requests the same enforcement mechanism here.

---

[9]     A true and correct copy of this Order is attached hereto as Exhibit B.

This Court has the power to enter an Order designed to coerce compliance with its terms. See Berne Corp. v. Gov't of the Virgin Islands, 570 F.3d 130, 139 (3d Cir. 2009). Such orders can apply to the party defendants as well as non-defendants because "an instigator of contemptuous conduct may not absolve himself of contempt liability by leaving the physical performance of the forbidden conduct to others." Roe v. Operation Rescue, 54 F.3d 133, 139 (3d Cir. 1995) (internal citation and quotation omitted). Accordingly, even if a particular Landowner is not physically present at a Property interfering with Transco's authorized activities, if clear and convincing evidence establishes their involvement in any of the activities related to the interference, such as allowing protestors on their Property subject to a possession Order, that Landowner can be held in contempt. See id. Further, individuals who are neither parties to a proceeding nor named in a court order may nonetheless be subject to the Court's contempt powers if they have "knowledge of a valid court order and abet others in violating it." Id. at 140 (citations omitted). Therefore, third parties can also be held in contempt if they interfere with Transco's authorized activities in the Rights of Way.

For all the foregoing reasons, Transco has demonstrated immediate and irreparable harm sufficient to justify a preliminary injunction granting access to and possession of the Rights of Way, and authorizing the U.S. Marshal Service to arrest and confine any individuals who interfere with such access and possession.

## C.      DEFENDANTS' HARM CAN BE REMEDIED WITH MONEY DAMAGES.

In contrast to the significant construction delays and financial harm that Transco will suffer, any damages to Defendants can be compensated with money as determined during a compensation hearing. Across the country, courts weighing the harm to landowners against the harm to pipeline companies when considering motions for immediate possession have found that

landowners' interests are adequately protected by the condemnation proceeding, and that the equities favor immediate possession. See, e.g., Sage, 361 F.3d at 825-26 (noting that landowners will be adequately compensated for the value of the properties and any damages); Constitution Pipeline Co. v. A Permanent Easement for 0.42 Acres, 2015 WL 12556145, at *5 ("Any injury to defendant will arise from the [Natural Gas Act] and the FERC Order, and will occur regardless of whether the Court grants a preliminary injunction to [the pipeline company].  In the exercise of its discretion, the Court finds that the harm alleged by defendants weigh less heavily than the harms alleged by plaintiff."); Columbia Gas Transmission LLC v. 0.85 Acres, 2014 WL 4471541, at *7 ("Nothing indicates that the Defendants will suffer any greater harm by allowing Columbia to possess the property immediately instead of after trial and the determination of just compensation."); E. Tenn. Natural Gas, LLC v. 3.62 Acres, 2006 WL 1453937, at *15 (noting that the defendants failed to show any additional harm other than the inevitable harm resulting from the taking); Steckman Ridge, 2008 WL 4346405, at *16 (any harm to the landowners as a result of the immediate possession is "slight at best" and can readily be compensated for from the bond amount required); Columbia Gas Transmission Corp. v. An Easement, 2006 WL 401850, at *3 (harm to the pipeline company outweighed any harm to the landowner); USG Pipeline Co. v. 1.74 Acres, 1 F. Supp. 2d 816, 825-26 (E.D. Tenn. 1998) (granting immediate possession because even if FERC order is overturned upon review by the FERC or some other court with proper jurisdiction, the properties could be restored substantially to its prior condition and landowner could seek damages in trespass).

Here, Transco is proposing to post bonds in the amounts set forth in Exhibit F to the Sztroin Injunction Declaration, or in such other amount as the Court determines.  Any money damages ultimately determined to be due to Defendants are secure.  Moreover, the FERC

approved the Project and specifically balanced the impact on landowners of Transco's Project. The FERC concluded that the Project "has been designed to minimize impacts on landowners and the surrounding communities."  FERC Order, ¶ 25.

Thus, the balance of the harms weighs in favor of Transco.

**D.     THE PUBLIC INTEREST IS PROTECTED BY GRANTING TRANSCO POSSESSION.**

Granting possession by March 20, 2017 is in the public interest, because the Project will provide Transco's customers and the markets they serve with greatly enhanced access to Marcellus Shale natural gas supplies, support the overall reliability and diversification of energy infrastructure along the Atlantic seaboard and points south, and meet the anticipated increase in market demands for natural gas consumption.  Sztroin Injunction Declaration, ¶ 25.  By issuance of the FERC Order, the FERC found that the construction and operation of the Project is in the public interest.  Accordingly, it is in the public interest that Transco be given possession of the Rights of Way on each Property so that Transco can comply with the requirements of the FERC Order and all permits and environmental restrictions.

There is substantial public interest – the need for natural gas supply – at stake in this case. The U.S. Supreme Court has said that "courts of equity may go to greater lengths to give relief in furtherance of the public interest than they are accustomed to go when only private interests are involved."  Sage, 361 F.3d at 823-27 (quoting Va. Ry. Co. v. Sys. Fed'n No. 40, 300 U.S. 515, 552 (1937)).  Indeed, courts around the country have found a strong public interest in constructing and operating interstate pipelines.  See, e.g., Steckman, 2008 WL 4346405, at *17 (holding that issuance of the FERC order is evidence that the project is in the public interest); Columbia Gas Transmission Corp. v. An Easement, 2006 WL 401850, at *3; Sage, 361 F. 3d at 830; N. Border Pipeline Co. v. 64.111 Acres, 125 F. Supp. 299, 301 (N.D. Ill. 2000).

Here, the FERC concluded that "[b]ased on the benefits that Transco's project will provide, the absence of adverse effects on existing customers and other pipelines and their captive customers, and the minimal adverse effects on landowners or surrounding communities, we find, consistent with the Certificate Policy Statement and NGA section 7(c), that the public convenience and necessity requires approval of Transco's proposal, subject to the conditions discussed below." FERC Order, ¶ 33.

Accordingly, the public interest weighs in favor of granting Transco possession of the Rights of Way.

## V. **CONCLUSION.**

For all these reasons, Plaintiff Transcontinental Gas Pipe Line Company, LLC respectfully requests that the Court grant this Motion and enter the proposed Orders attached as Exhibit A, thereby granting Transco possession of the Rights of Way by March 20, 2017 subject to the posting of a bond in the amount specified by the Court, and authorizing the U.S. Marshal Service to enforce the terms of each Order.

Respectfully submitted,

s/ Elizabeth U. Witmer
Elizabeth U. Witmer, Esq. (55808)
Sean T. O'Neill, Esq. (205595)
Saul Ewing LLP
1200 Liberty Ridge Drive, Suite 200
Wayne, PA  19087-5569
(610) 251-5062
ewitmer@saul.com
soneill@saul.com

*Attorneys for Plaintiff Transcontinental Gas Pipe Line Company, LLC*

Dated:  February 20, 2017