IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TRANSCONTINENTAL GAS PIPE LINE
COMPANY, LLC,

              Plaintiff,

    v.

PERMANENT EASEMENT FOR 2.14 ACRES
AND TEMPORARY EASEMENTS FOR 3.59
ACRES IN CONESTOGA TOWNSHIP,
LANCASTER COUNTY, PENNSYLVANIA,
TAX PARCEL NUMBER 1201606900000, et al,

              Defendants.

CIVIL ACTION
NO. 17-715

TRANSCONTINENTAL GAS PIPE LINE
COMPANY, LLC,

              Plaintiff,

    v.

PERMANENT EASEMENT FOR 1.33 ACRES,
TEMPORARY EASEMENTS FOR 2.28 ACRES
IN CONESTOGA TOWNSHIP, LANCASTER
COUNTY, PENNSYLVANIA, TAX PARCEL
NUMBER 1202476100000, 4160 MAIN STREET,
CONESTOGA, PA  17516, et al,

              Defendants.

CIVIL ACTION
NO. 17-720

TRANSCONTINENTAL GAS PIPE LINE
COMPANY, LLC,

Plaintiff,

v.

PERMANENT EASEMENT FOR 0.94 ACRES
AND TEMPORARY EASEMENTS FOR 1.61
ACRES IN CONESTOGA TOWNSHIP,
LANCASTER COUNTY, PENNSYLVANIA,
TAX PARCEL NUMBER 1203589400000,
SICKMAN MILL ROAD, et al,

Defendants.

CIVIL ACTION
NO. 17-722

---

TRANSCONTINENTAL GAS PIPE LINE
COMPANY, LLC,

Plaintiff,

v.

PERMANENT EASEMENT FOR 2.02 ACRES
AND TEMPORARY EASEMENTS FOR 2.76
ACRES IN MANOR TOWNSHIP, LANCASTER
COUNTY, PENNSYLVANIA, TAX PARCEL
NUMBER 4100300500000, 3049 SAFE HARBOR
ROAD, MANOR TOWNSHIP, LANCASTER,
PA, et al,

Defendants.

CIVIL ACTION
NO. 17-723

TRANSCONTINENTAL GAS PIPE LINE
COMPANY, LLC,

            Plaintiff,

      v.

PERMANENT EASEMENT FOR 1.02 ACRES
AND TEMPORARY EASEMENTS FOR 1.65
ACRES IN WEST HEMPFIELD TOWNSHIP,
LANCASTER COUNTY, PENNSYLVANIA,
TAX PARCEL NUMBER 3000462100000, et al,

           Defendants.

CIVIL ACTION
NO. 17-1725

---

## MEMORANDUM OPINION

Schmehl, J.

August 23, 2017

## I.   INTRODUCTION

Plaintiff, Transcontinental Gas Pipeline Company, LLC ("Transco"), is involved in

a project to construct and operate a natural gas pipeline running through five states,

including a portion of Lancaster County, Pennsylvania. Before the Court is the Motion

for Partial Summary Judgment of Plaintiff in the four of the five above-captioned cases.[1]

Defendant/landowners Hilltop Hollow Limited Partnership, Hilltop Hollow Partnership,

LLC, General Partner to Hilltop Hollow Limited Partnership ("Hilltop"), Stephen

Hoffman ("Hoffman"), Blair and Megan Mohn ("Mohn") and Lynda Like ("Like") all

filed oppositions to Plaintiff's Motions for Partial Summary Judgment. Plaintiff filed

replies, and argument was held on said motions.

---

[1] On July 7, 2017, this Court granted Plaintiff's Motion for Partial Summary Judgment in case number 17-1725 as unopposed, but declined to grant Plaintiff's Motion for Preliminary Injunction as to the landowners in that matter, the Adorers of the Blood of Christ ("Adorers"). Accordingly, this opinion will address the Motions for Partial Summary Judgment in case numbers 17-715, 17-720, 17-722, and 17-723. It will also dispose of the Motion for Preliminary Injunction in those four cases, as well as 17-1725.

Also before the Court is Transco's Motions for Preliminary Injunction as to the four landowners above, as well as Adorers of the Blood of Christ, United States Province ("Adorers"). The landowners in question have opposed Plaintiff's Motions for Preliminary Injunction, and an evidentiary hearing was held on said motions. For the following reasons, I find that Plaintiff has the substantive right to condemn the properties in question and Plaintiff's Motions for Partial Summary Judgment are granted. Further, I find that Plaintiff has the right to immediate possession of the properties in question and Plaintiff's Motions for Preliminary Injunction are granted.

## II.    MOTIONS FOR PARTIAL SUMMARY JUDGMENT

### A.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. Proc. 56(c).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d

4

Cir. 2010) (*citing* Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).

While the moving party bears the initial burden of showing the absence of a genuine

issue of material fact, meeting this obligation shifts the burden to the non-moving party

who must "set forth specific facts showing that there is a genuine issue for trial."

Anderson, 477 U.S. at 250.

## B. **FACTUAL BACKGROUND**

On March 31, 2015, Transco filed an application with the Federal Energy

Regulatory Commission ("FERC") under section 7(c) of the Natural Gas Act, 15 U.S.C.

§ 717f(c), and Part 157 of the FERC's regulations for a certificate of public convenience

and necessity for its project to construct and operate a natural gas pipeline in

Pennsylvania, Maryland, Virginia, North Carolina and South Carolina. On October 22,

2015, FERC mailed a letter to affected landowners, describing the project and inviting

them to participate in the environmental review process. (FERC Order, ¶ 68.) On May 5,

2016, FERC issued a draft Environmental Impact Statement, setting a public comment

period from May 12, 2016 to June 27, 2016. (FERC Order, ¶ 72.) FERC staff held four

public comment meetings between June 13 and 16, 2016, at which over 200 speakers

commented. (Id.) FERC also received over 560 written comments in response to the draft

EIS. (Id.)

On October 13, 2016, FERC sent a letter to landowners regarding two alternative

pipeline routes, and allowed a special 30 day comment period, during which time it

received 25 letters regarding the proposed alternatives. (FERC Order, ¶ 73.) On

November 3, 2016, FERC issued for comment a draft General Conformity

Determination. (FERC Order, ¶ 74.) On December 30, 2016, FERC issued a final

Environmental Impact Statement. (FERC Order, ¶ 75.) Thereafter, on February 3, 2017, FERC issued an order granting Transco a certificate of public convenience and necessity to construct, install, modify, operate, and maintain the Project known as the Atlantic Sunrise pipeline. (David Sztroin Declaration, ¶ 13.) In order to construct, install, operate and maintain the FERC-approved project, Transco needs to obtain rights of way as described and depicted as Exhibit A attached to the Complaint in each of the above matters and as Exhibit B attached to the Sztroin declaration. (Sztroin Dec., ¶ 2, 17.) These rights of way conform to the pipeline route reviewed and approved by the FERC in the order of February 3, 2017. (Sztroin Dec., ¶ 18.) The value of the Rights of Way sought in each of the above matters is claimed by the respective Landowners to be in excess of $3,000, as each Landowner has rejected an offer by Transco to purchase the rights of way for more than $3,000. (Declaration of Aaron Blair, ¶¶ 8, 9.)

The FERC Certificate lists timely and untimely intervenors. To be considered a timely intervenor, a landowner was required to file a motion to intervene within two weeks of April 15, 2015, when notice of Transco's application was published in the *Federal Register*. Landowner Stephen Hoffman timely intervened and Gary and Michelle Erb (owners of Hilltop Hollow) also intervened, albeit untimely, in the FERC proceeding as party intervenors. (FERC Order, Appendix A and B.) Although they did not intervene in the FERC proceedings, Landowners Blair and Megan Mohn and Lynda Like submitted comments to FERC regarding the project during the public comment period.

## C. **DISCUSSION**

The Natural Gas Act permits the holder of a certificate of public convenience and necessity issued by FERC to use eminent domain to acquire rights of way necessary to

construct, operate and maintain a project as approved by the FERC Order. 15 U.S.C. §
717f(h). Courts have held that the NGA authorizes a party to exercise the federal power
of eminent domain if it meets the three-prong test set forth in the statute:

1) The party must hold a FERC Certificate of Public Convenience and Necessity;

2) The party has not been able to acquire the property rights required to
   construct, operate and maintain a FERC-approved pipeline by agreement with
   the landowners; and

3) The value of the property sought to be condemned is more than $3,000.

Columbia Gas Transmission, LLC v. 1.01 Acres, 768 F.3d 300, 304 (3d Cir. 2014);
Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath
11.078 Acres, No. 08-168, 2008 WL 4346405, at *12-*13 (W.D. Pa. Sept. 19, 2008);
Alliance Pipeline L.P. v. 4.360 Acres of Land, 746 F.3d 362, 364 (8th Cir. 2014);
Millennium Pipeline Co., L.L.C. v. Certain Permanent and Temporary Easements, 777
F.Supp.2d 475, 479 (W.D. N.Y. 2011); aff'd 552 F.App'x 37 (2d Cir. 2014).

In the above matters, there is no dispute that Transco holds a FERC certificate,
that it has been unable to acquire the property rights in question to construct, operate and
maintain the FERC-approved pipeline by agreement with the landowners, and that the
value of the properties in question is greater than $3,000. However, the landowners have
opposed the entry of partial summary judgment in this matter and present several
arguments in opposition to Transco's exercise of eminent domain. Landowners Hilltop
and Hoffman argue that they have been denied their due process rights under the Fifth
Amendment to the United States Constitution and that Plaintiff therefore does not have
the authority to condemn the Rights of Way. Landowners Like and Mohn argue that the

FERC order is a "conditioned" order without "force or effect" and that the Rights of Way being condemned exceed the scope of the FERC order. As discussed below, I find that all of these arguments are unpersuasive. Landowners cannot establish any genuine issue of material fact as to the three conditions set forth in the Natural Gas Act required prior to the exercise of eminent domain by Transco; therefore, Plaintiff is entitled to the entry of partial summary judgment in this matter.

### 1.  HILLTOP HOLLOW AND HOFFMAN

Hilltop Hollow and Hoffman ("Hilltop") do not dispute the fact that Transco has a FERC certificate, has been unable to acquire the rights of way that it needs to construct its pipeline, and that the value of the property in question is over $3,000. Rather, Hilltop argues that its due process rights under the Fifth Amendment are being violated.

First, Hilltop argues that this Court has jurisdiction in this matter beyond the issue of fair compensation. Hilltop admits that "FERC's procedures and the Natural Gas Act provide that substantive challenges to the Certificate Order be directed in the first instance to FERC," but then argues that the "importance of Hilltop's right to due process and the de facto finality of the proposed taking," should overrule the FERC provisions that prohibit substantive challenges in this Court.[2]

This argument is incorrect. Hilltop's claims of due process violations are in fact attacks on the FERC order itself, disguised as constitutional claims. It is widely accepted that the validity of a FERC Order can only be challenged in front of FERC, and then in the United States Court of Appeals for the District of Columbia Circuit. It is important

---

[2] I note that Hilltop also argues that since FERC presently has only one member, it lacks a quorum to address its request for rehearing. However, on August 3, 2017, the United States Senate confirmed two additional members of FERC. Therefore, FERC now has a quorum and this argument of Hilltop is moot and will be disregarded.

that this precedent be followed so large pipeline projects cannot be challenged in many

forums, so as to establish a sole final arbiter for the decisions. In Tennessee Gas Pipeline

Co. v. 104 Acres of Land More of Less, 749 F.Supp. 427 (D.R.I. 1990), the court set

forth the limitations of a federal district court in reviewing FERC Certificates of Public

Convenience and Necessity pursuant to the Natural Gas Act. It stated:

> United States District Courts have a limited scope of review under Section
> 7(h) of the Natural Gas Act. Disputes over the reasons and procedure for
> issuing certificates of public convenience and necessity must be brought to
> the Federal Energy Regulatory Commission for hearing. 15 U.S.C. §
> 717f(b). The District Court's role is to evaluate the scope of the certificate
> and to order condemnation of property as authorized in the
> certificate. *See* Williams Natural Gas Co. v. Oklahoma City, 890 F.2d 255,
> 262 (10th Cir.1989)("Judicial review ... is exclusive in the courts of
> appeals once the FERC certificate issues."), *cert. denied,* 497 U.S. 1003,
> 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990); Transcontinental Gas Pipe Line
> Corp. v. 118 Acres of Land, 745 F.Supp. 366 (E.D.La.1990)("review of
> FERC orders are to be made only to United States Circuit Courts of
> Appeal"). District Courts, therefore, are limited to jurisdiction to order
> condemnation of property in accord with a facially valid certificate.
> Questions of the propriety or validity of the certificate must first be
> brought to the Commission upon an application for rehearing and the
> Commissioner's action thereafter may be reviewed by a United States
> Court of Appeals.

Id. at 430. *See also* Steckman Ridge GP, LLC v. An Exclusive Nat. Gas Storage

Easement Beneath 11.078 Acres, 2008 WL 4346405, at *4 (W.D. Pa. Sept. 19, 2008)

("Under the statutory framework, there is no appeal of a FERC decision save to the

appropriate Court of Appeals. Disputes as to the propriety of FERC's proceedings,

findings, orders, or reasoning, must be brought to FERC by way of request for rehearing.

Appeals may thereafter be brought before a U.S. Court of Appeals only.")

Clearly, abundant case law states that the jurisdiction of this court in this type of

proceeding is to order condemnation only. Hilltop has failed to cite any case that supports

its proposition that this Court has jurisdiction in this matter to independently address the

validity of the FERC order. Therefore, I find that this Court lacks the jurisdiction to address any sort of attack on the FERC order itself, constitutional or otherwise.

Next, Hilltop argues that it has not been afforded its due process right to challenge whether the project serves a public purpose. It is undisputed in this matter that Hilltop participated in the pre-deprivation hearing, filed a request for rehearing at FERC, and filed a challenge to the FERC order in the United States Court of Appeals for the District of Columbia Circuit. As discussed above, this is the proper forum in which to challenge the validity of a FERC order. Although Hilltop's request for rehearing is pending in front of FERC, the NGA provides that the filing of a request for rehearing shall not, unless specifically ordered by FERC, operate as a stay of the certificate order. 15 U.S.C. § 717r(c); see Tenn. Gas Pipeline Co., 749 F.Supp. at 431 ("Applications for rehearing by three public utility companies are presently before the commission. However, the Natural Gas Act directs that an application for a rehearing shall not operate as a stay of the Commission's order unless specifically ordered by the Commission or by a reviewing Court of Appeals.")

Hilltop received adequate due process at the FERC level, and on appeal. Its attempt to claim due process violations to this Court is a collateral attack to the FERC order, which is not permitted. Any challenge to the substance and/or validity of the order belongs in front of FERC. "The district court's function under the statute is not appellate, but rather, to provide for enforcement." Sabal Trail Transmission, LLC v. +/- 0.14 Acres of Land, 2016 WL 3189010 at *2 (M.D. Fl. June 8, 2016).

Further, the specific collateral attack that Hilltop presents here, i.e., that the FERC order does not serve a public purpose, has been rejected by other courts. See Constitution

Pipeline Co., LLC v. A Permanent Easement for 1.52 Acres, 2015 WL 12556149, at *3

(N.D.N.Y. Feb. 26, 2015) ("[D]efendants argue that the FERC Order does not support a

public purpose...plaintiff correctly points out that once a FERC certificate is issued,

judicial review of the FERC certificate itself is only available in the circuit court."). In

addition, to the extent Hilltop is arguing that the process by which FERC granted the

certificate is deficient, that type of attack has also been rejected. See Tenn. Gas Pipeline

Co. v. 104 Acres of Land, 749 F.Supp. at 430 (finding that disputes over the procedures

for issuing certificates of public convenience and necessity must be brought to the FERC

for rehearing, and thereafter to a federal court of appeals).

     In addition, I find that even if this Court did have jurisdiction to consider Hilltop's

constitutional arguments, which it does not, no due process violations have occurred.

Hilltop presents two arguments regarding their constitutional due process rights.[3] First,

they argue that due process requires an in-person evidentiary hearing prior to the issuance

of the FERC order, or prior to condemnation. Second, they argue that FERC's issuance of

a Tolling Order which extends FERC's time to decide Hilltop's request for rehearing and

a stay violates their due process rights. I will address both arguments below.

     First, I reject Defendant's argument that due process requires an in-person

evidentiary hearing before a FERC order can be issued. In the instant matter, FERC

issued the Order after a "paper hearing," meaning Hilltop and other affected landowners

submitted written objections during the certificate review and comment period. Hilltop

claims that it is entitled to an in-person hearing on this matter, and argues that the lack of

such a hearing violates its right to be heard. However, the NGA does not require an in-

---

[3] Hilltop also argues that because FERC lacks a quorum, they have no effective means to challenge the
FERC Order, and its due process rights are therefore being violated. As discussed above, FERC has a
quorum as of August 3, 2017. Therefore, this argument is moot.

person evidentiary hearing. "FERC's choice whether to hold an evidentiary hearing is generally discretionary." Blumenthal v. FERC, 613 F.3d 1142, 1144 (D.C.Cir.2010). "In general, FERC must hold an evidentiary hearing only when a genuine issue of material fact exists, and even then, FERC need not conduct such a hearing if [the disputed issues] may be adequately resolved on the written record." Cajun Elec. Power Coop., Inc. v. FERC, 28 F.3d 173, 177 (D.C.Cir.1994) (internal citations and quotation marks omitted) (alteration in original). See also Minisink Residents for Envtl. Pres. & Safety v. F.E.R.C., 762 F.3d 97, 114 (D.C. Cir. 2014). Clearly, FERC was not required to hold an in-person evidentiary hearing in this matter, and the fact that they granted the Order after a paper hearing does not result in a due process violation.

In addition, federal courts have found that, for purposes of a taking, due process only requires that reasonable notice and an opportunity to be heard is provided in the compensation stage of the proceedings. See Collier v. City of Springdale, 733 F.2d 1311, 1314 (8th Cir. 1984); Presley v. City of Charlottesville, 464 F.3d 480, 489 (4th Cir. 2006).[4]

Next, Hilltop argues that FERC's tolling order deprives them of their due process rights because it "indefinitely" extends FERC's "time limit to rule on [Landowners'] Motion for Rehearing and stay." In response, Transco argues that the issuance of the Tolling Order does not deprive Hilltop of a protectable due process, and therefore it is not entitled to due process protections. I find Transco is correct. Although a cause of action constitutes a protectable property interest for the purposes of evaluation of due process violations, mere delays in the adjudication of a claim do not amount to a deprivation of

---

[4] I find that Hilltop's reliance on Brody v. Village of Port Chester, 434 F.3d 121 (2d Cir. 2005) and Finberg v. Sullivan, 634 F.2d 50 (3d Cir. 1980) in support of their argument that they are entitled to a pre-deprivation judicial hearing is misplaced, as neither case addresses a taking under the Natural Gas Act and both are clearly distinguishable from the instant set of facts.

property. See Council of & for the Bline of Delaware Cty. Valley, Inc. v. Regan, 709

F.2d 1521, 1533-34 (D.C. Cir. 1983) ("In order to state a legally cognizable constitutional

claim, appellants must allege more than the deprivation of the *expectation* that the agency

will carry out its duties.")(emphasis in original); see also Polk v. Kramarsky, 711 F.2d

505, 508-09 (2d Cir. 1983) (finding that plaintiff's property right, while delayed, was not

extinguished, and that no deprivation of property interest occurred). The reconstituted

FERC, now with a quorum to act, has the ability to address Hilltop and the other

landowners' claims for relief. Accordingly, Hilltop's due process claims must fail.

### 2. LIKE AND MOHN

Landowners Lynda Like and Brian and Megan Mohn ("Like and Mohn") do not

dispute that FERC issued an order granting a certificate of public convenience and

necessity, that the value of the rights of way sought exceed $3,000, that Transco has been

unable to obtain the Rights of Way in question from the landowners, and that the Rights

of Way being condemned conform to the pipeline route that was contained in the FERC

order. Accordingly, they are clearly unable to present any genuine issues of material fact

regarding Transco's substantive right to condemn. Like and Mohn instead argue that the

FERC order is a "conditional order" that is "without force and effect" and that the rights

of way being condemned exceed the scope of the FERC order. I find both of these

arguments to be unpersuasive.

Like and Mohn argue that FERC can condition a FERC order on "reasonable

terms and conditions" as the public convenience and necessity may require pursuant to

the NGA. They further argue that because the FERC order for the project in this matter

incorporated many conditions, some of which have not yet been met, Transco is not

13

permitted to exercise eminent domain. However, the NGA does not contain a requirement that the holder of a FERC certificate satisfy all conditions of said certificate prior to the exercise of eminent domain. Rather, the FERC order specifically stated that "[o]nce a natural gas company obtains a certificate of public convenience and necessity, it may exercise the right of eminent domain in a U.S. District Court or a state court." FERC Order, ¶ 67. Courts have repeatedly rejected similar arguments that a pipeline company cannot exercise eminent domain because a FERC Order is conditioned. See, e.g., Constitution Pipeline, 2015 WL 12556145, at *2 (rejecting argument that pipeline company could not exercise eminent domain until it had obtained certain permits required prior to construction as conditions of the certificate order because the FERC had not expressly made such permits a condition to exercising eminent domain); Columbia Gas Transmission, LLC v. 370.393 Acres, 2014 WL 5092880, at *4 (D. Md. Oct. 9, 2014)(rejecting argument that pipeline company had failed to comply with certain conditions listed in the FERC certificate and finding that claims that a company is not in compliance with the FERC certificate must be brought to FERC, not the court); Portland Natural Gas Transmission Sys. v. 4.83 Acres, 26 F.Supp.2d 332, 336 (D.N.H. 1998) ("Compliance with FERC conditions cannot be used as a defense to the right of eminent domain and cannot be cited to divest the court of the authority to grant immediate entry and possession to the holder of a FERC certificate); Tenn. Gas Pipeline Co. v. 104 Acres of Land, 749 F.Supp. 427, 433 (D.R.I. 1990) (holding that "requirements in the FERC order arise after ownership of the rights of way are obtained and do not operate as a shield against the exercise of eminent domain power").

Like and Mohn cite <u>Delaware Dept. of Natural Resources and Environmental Control v. FERC</u>, 558 F.3d 575, 579 (D.D.C. 2009), and <u>Ruby Pipeline, L.L.C.</u>, 133 FERC ¶ 61015, at 61055 (2010), for the proposition that Transco cannot condemn the property in question based on the FERC order because it is "an incipent authorization without force or effect." However, neither of these cases supports the landowners' argument that a pipeline company cannot exercise eminent domain if the certificate order contains conditions. Rather, both <u>Delaware Dept. of Natural Resources</u> and <u>Ruby Pipeline</u> address the fact that conditioned certificate orders do not authorize *construction* to start.

The FERC certificate in question does, in fact, contain prerequisite conditions, some of which remain unmet at this time. However, the landowners do not cite to, nor have I located, any case that holds that Transco's exercise of eminent domain is prohibited until the conditions in the FERC certificate are met. Lacking any such case law, I will not order such an extreme outcome. It is true that there are conditions in the FERC certificate that Transco will need to meet prior to commencing actual construction of the pipeline, but the fulfillment of these conditions is not a prerequisite to Transco's exercise of eminent domain. Furthermore, those conditions must be met before any construction begins.

Like and Mohn also argue that the rights of way being condemned exceed the scope of the FERC order. In particular, Like and Mohn take issue with the fact that the Complaint states Transco seeks to acquire rights of way that include the right to "alter, repair, change the size of, replace and remove" the pipeline. Complaint, ¶1(f). At oral argument in this matter, counsel for the landowners indicated a particular concern with

the language that allows Transco to "change the size of" the pipeline, arguing that this would allow Transco to expand the pipeline beyond the right of way authorized by the FERC order. This argument is clearly incorrect, because the description of the rights of way in the Complaints in these matters expressly limits the rights of way being condemned to those rights "approved by the Order of the Federal Energy Regulatory Commission dated February 3, 2017, Docket No. CP15 138 000, 158 FERC ¶ 61,125 (2017)." Based upon this description, the rights of way that are being condemned in this matter are not subject to being increased in size. However, out of an abundance of caution, I will limit the rights being sought by Transco in this regard to the right to alter, repair, **change but not increase the size of**, replace and remove the pipeline.

## III.   MOTIONS FOR PRELIMINARY INJUNCTION

### A. LEGAL STANDARD

Once Transco has established that it has a substantive right to condemn the property at issue, a court "may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction" pursuant to Rule 65 of the Federal Rules of Civil Procedure. E. Tenn. Natural Gas Co. v. Sage, 361 F.3d 808, 828 (4th Cir. 2004). A party seeking a preliminary injunction must prove four factors: 1) a reasonable probability of success on the merits; 2) irreparable harm to the movant in the absence of relief; 3) granting the preliminary injunction will not result in greater harm to the nonmoving party; and 4) the public interest favors granting the injunction. American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012). In Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017), the Third Circuit recently clarified the preliminary injunction standard:

> A movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

Reilly, 858 F.3d at 179.

## B. **DISCUSSION**

After analysis of the four factors set forth above with regard to the five landowners currently before me, I find that the factors favor the entry of a preliminary injunction in favor of Transco.

### 1. **Likelihood of Success on the Merits**

First, Transco has already succeeded on the merits. A preliminary injunction in a condemnation case is unlike preliminary injunctions in other types of civil matters because the plaintiff requests a decision on the merits of the matter at the same time. As explained by the Third Circuit:

> This is not a "normal" preliminary injunction, where the merits will await another day. In those situations, the probability of success is not a certainty such that weighing the other factors is paramount. Here, there is no remaining merits issue; we have ruled that Columbia has the right to the easements by eminent domain. The only issue is the amount of just compensation – which will definitely be determined on remand, but the result of which can have no affect [sic] on Columbia's rights to the easement.

Columbia Gas Transmission, LLC v. 1.01 Acres, 768 F.3d at 315. Further, all three Pennsylvania district courts within the Third Circuit have held that the grant of a preliminary injunction is appropriate when a FERC certificate holder has established the substantive right to condemn a property, subject to a future determination of just

17

compensation. <u>Constitution  Pipeline Company, LLC v. A Permanent Easement for 1.92</u> <u>Acres</u>, 2015 WL 1219524 at *4 (M.D. Pa. Mar. 17, 2015); <u>Steckman Ridge</u>, 2008 WL 4346405, at *18; <u>Columbia Gas Transmission Corp. v. An Easement</u>, 2006 WL 401850, at *3. Therefore, given my determination above that Transco has the substantive right to condemn the properties at issue, the likelihood of success on the merits has been established. Accordingly, this factor favors Transco.

### 2.  Irreparable Harm

Second, Transco will suffer irreparable harm if a preliminary injunction is not granted. In their opposition to the preliminary injunction, the defendants make several arguments. They argue that the project in question is already delayed and will not be completed in time for the 2017-18 winter heating season, that the project still has numerous conditions that need to be satisfied before construction can begin, so the timeliness of the project does not depend on immediate possession of the properties in question and that the monetary losses Transco will incur if the project is delayed do not constitute irreparable harm.

These arguments are insufficient to defeat the claims of irreparable harm put forth by Transco. First, Transco argues that a construction delay itself is irreparable harm and it cannot even begin construction in Pennsylvania until it has survey access and has satisfied relevant pre-construction conditions. Numerous courts have agreed that construction delays in building these types of pipelines constitute irreparable harm. <u>See,</u> <u>e.g.</u>, <u>Constitution Pipeline Co. v. A Permanent Easement for 0.42 Acres</u>, 2015 WL 12556145, at *5 (holding that pipeline company would be irreparably harmed without immediate possession because it would be unable to begin construction in time to allow

the project to be completed by the in service date); Steckman Ridge, 2008 WL 436405, at *17 (holding that pipeline company would be irreparably harmed without immediate possession because it would suffer undue delay and be in non-compliance with the in service date required by the FERC Certificate). Admittedly, Transco has already missed the deadline to have the pipeline in service by the 2017-18 winter heating season as contained in the Order. (Sztroin testimony, July 17, 2017.) However, Transco argues that the date the pipeline will commence operation will continue to be pushed back if possession is not granted by August 18, 2017. Mr. Sztroin testified that every delay has a "domino effect" that delays the entire project further.

Further, Mr. Sztroin testified that Transco must have possession by August 18, 2017 in order to avoid specific construction delays. According to Mr. Sztroin, possession is necessary so Transco can complete surveys that are required to satisfy certain pre-construction conditions. In addition, he testified that construction is limited in some places by environmental conditions. In order to complete construction and ensure compliance with shipper contracts, he testified that Transco must have possession by August 18, 2017, to complete the surveys necessary on endangered and threatened wildlife that can only be done during certain times each year.

In addition, Transco argues that it will suffer irreparable harm in the manner of monetary loss if a preliminary injunction is not granted. Transco alleges that non-possession of the properties at issue here will cause it to lose $500,000 per month, and will delay revenue of $33,000,000 per month. This argument was supported by the testimony of Mr. Sztroin. Further, Sztroin testified about the costs of "move-arounds" in linear pipeline construction if crews cannot access a particular property.

I find that Transco has sufficiently proven that it will suffer irreparable harm if it does not obtain possession of the properties at issue. As recently stated by the Honorable Matthew W. Brann of the U.S. District Court for the Middle District of Pennsylvania, in addressing different properties located along the same pipeline project:

> In sum, the Atlantic Sunrise Project is large in both scope and geography, spanning five states. "The magnitude of the Project requires a complex and coordinated construction process, with work activities being performed in sequential phases." Sabal Trail Transmission, LLC v. +/- 0.41 Acres of Land in Hamilton Cty. Florida, 2016 WL 3188985, at * 3 (M.D. Fla. June 8, 2016). Each piece of the construction puzzle depends on the prior piece timely placed. Untimeliness in one small part of this enormous project would result in a domino effect on the timeliness of all other areas of the project.

Transcontinental Gas Pipeline Company, LLC v. Permanent Easement for 3.70 Acres, No. 17-CV-628, Memorandum Opinion, ECF no. 27 (M.D. Pa., Aug. 9, 2017). The irreparable harm factor weighs strongly in favor of Transco.

### 3.  Harm to the Nonmoving Party

Granting Transco's preliminary injunction will not result in greater harm to the landowner, despite Defendants' arguments to the contrary. As determined above, Transco has the substantive right to possession. Therefore, Transco will eventually obtain possession of the properties at issue; the only question is the timing of possession. It is natural for some landowners to want to delay possession as long as possible, but there is no legal basis for further delay. As stated by the Court in Constitution Pipeline Co., 2015 WL 12556145, at *5, "[a]ny injury to defendant will arise from the [Natural Gas Act] and the FERC Order, and will occur regardless of whether the Court grants a preliminary injunction to [the pipeline company]. In the exercise of its discretion, the Court finds that the harm alleged by defendants weighs less heavily than the harms alleged by plaintiff."

Constitution Pipeline Co., 2015 WL 12556145, at *5. "Nothing indicates that the defendants will suffer any greater harm by allowing [the pipeline company] to possess the property immediately instead of after trial and the determination of just compensation." Columbia Gas Transmission LLC v. 0.85 Acres, 2014 WL 4471541, at *7.

Defendants Like and Mohn argue that they face a risk of harm because the project lacks certain permits and if their property is taken and the permits are eventually denied, they will have lost their property with no means to recover it. I find this contention to be incorrect, as the landowners would have legal recourse if this unlikely event would occur. See USG Pipeline Co. v. 1.74 Acres, 1 F.Supp.2d 816, 825-26 (E.D. Tenn. 1998) (granting immediate possession because even if the FERC Order is overturned by FERC or some other court with jurisdiction over it, the properties could be restored substantially to their prior condition and landowners could seek damages in trespass.) Like and Mohn also argue that they will be irreparably harmed because Plaintiff may mobilize its equipment on their properties and remove trees prior to construction approval. This argument is unpersuasive, because this conduct will either occur now or after just compensation has been determined. I find this alleged harm to be outweighed by Plaintiff's risk of harm in not obtaining immediate possession.

Defendant Adorers argue they will suffer harm that implicates their fundamental rights to free exercise of religion and ownership of property if Transco is granted immediate possession. Adorers claim that they "exercise their religious beliefs by, among other things, caring for and protecting the land they own," and that their efforts to "preserve the sacredness of God's Earth" are integral to the practice of their faith.

However, the Adorers have failed to establish how Transco's possession of the right of way on their land will in any way affect their ability to practice their faith and spread their message. They have not presented one piece of evidence that demonstrates how their religious beliefs will be abridged in any way. Clearly, the harm alleged by Transco outweighs this harm alleged by the Adorers. Additionally, Transco will post sufficient bonds upon the grant of the preliminary injunction; therefore, any amount of money damages any landowner may suffer will be secure and a remedy will be available. Accordingly, this factor weighs in favor of Transco.

### 4. Public Interest

Lastly, granting the preliminary injunction is in the public interest, as the project will provide the general public throughout a vast area of the country with access to the Marcellus Shale natural gas supplies for heating their homes and other purposes. Defendants Hilltop and Hoffman argue that much of the natural gas that will be carried by the pipeline is intended for exportation, and therefore, not in the public interest. However, this argument is speculative. Hilltop argues that 87% of the Project's capacity is currently subscribed to by four gas production companies that will have direct access to export facilities, but the mere fact that these companies will have access to export facilities does not mean that they will in fact export the natural gas out of the country. This argument is too speculative for me to find that this factor weighs in favor of the landowners.

"Congress passed the Natural Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices." E. Tennessee Nat. Gas Co. v. Sage, 361 F.3d at 830, citing Clark v.

Gulf Oil Corp., 570 F.2d 1138, 1145-46 (3d Cir. 1977). Congress and FERC have found that interstate natural gas projects, and this project in particular, are in the public interest. Accordingly, this factor also weighs in favor of Transco.

## IV.   **CONCLUSION**

For the reasons set forth above, Plaintiff's Motions for Partial Summary Judgment and for Preliminary Injunction are granted. Plaintiff shall post a bond with the Clerk of Court for each property in accordance with the Court's Order. Appropriate orders will follow.